# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 16, 2013

## STATE OF TENNESSEE v. HAROLD LYONS

**Appeal from the Criminal Court for Davidson County**
**No. 2012-A-105     Cheryl Blackburn, Judge**

_____

**No. M2012-02489-CCA-R3-CD - Filed November 20, 2013**

_____

In May 2010, the Defendant, Harold Lyons, was indicted for possession of drug paraphernalia, a Class A misdemeanor, and selling less than .5 grams of cocaine within 1,000 feet of an elementary school, a Class B felony. See Tenn. Code Ann. §§ 39-17-417, -425, -432. Following a jury trial, the Defendant was convicted of possession of drug paraphernalia and the lesser-included offense of facilitation of the sale of less than .5 grams of cocaine, a Class D felony. See Tenn. Code Ann. § 39-11-403. The trial court sentenced the Defendant as a Range III, persistent offender, to an effective ten-year sentence to be served in confinement. In this appeal as of right, the Defendant contends (1) that the evidence was insufficient to sustain his conviction for facilitation of the sale of less than .5 grams of cocaine and (2) that the trial court erred by denying the Defendant's request for an alternative sentence. Discerning no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROGER A. PAGE, JJ., joined.

Elaine Heard, Nashville, Tennessee, for the appellant, Harold Lyons.

Robert E. Cooper, Jr., Attorney General and Reporter; Tracy L. Bradshaw, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Stacey Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

On March 2, 2010, members of the Metropolitan Nashville Police Department (MNPD) conducted an undercover drug buy using a paid "cooperating individual," George Hemphill. Mr. Hemphill was searched to ensure that he had no money or contraband on him and was given an audio "wire" and "buy money," which consisted of a twenty-dollar bill that had been previously photocopied in order to record its serial number. Mr. Hemphill was then sent to a "high crime area" in order to purchase twenty dollars worth of cocaine.

As Mr. Hemphill walked down the street, he approached William Phillips, Jr. and asked him if he knew where he could buy some cocaine. Mr. Phillips pointed Mr. Hemphill towards a parked car in which Quanesha Underwood and the Defendant were sitting. Mr. Phillips testified at trial that he saw Mr. Hemphill approach the driver's side of the car where Ms. Underwood was sitting, but he did not see the drug buy. Mr. Hemphill testified that he went to the passenger's side of the car and had no contact with Ms. Underwood. According to Mr. Hemphill, he gave the Defendant the buy money in exchange for a rock of crack cocaine. Mr. Hemphill testified that the rock was "kind of short" for a "twenty."

After Mr. Hemphill had completed the drug buy, he gave the MNPD officers the "takedown signal" and "fast walked" back to the officer in charge of the operation. Mr. Hemphill gave the purchased rock to the officer and was searched again. No other drugs were found on Mr. Hemphill during this second search. Mr. Hemphill testified that he had never met Mr. Phillips, Ms. Underwood, or the Defendant prior to March 2, 2010. The rock was later sent to the Tennessee Bureau of Investigation (TBI) for analysis and was determined to be .1 grams of cocaine. It was also established at trial that the offense occurred approximately 705 feet from J.C. Napier Elementary School, which was an operational elementary school on the date of the offense.

Mr. Phillips, Ms. Underwood, and the Defendant were all arrested after Mr. Hemphill gave the "takedown signal." When the Defendant was arrested, he had the twenty-dollar bill used as the buy money lying in his lap. A search of the Defendant revealed a set of digital scales and approximately $860 in small denominations. However, no drugs were found on the Defendant. Ms. Underwood had $1,365 in cash and 42.6 grams of marijuana in her purse when she was arrested. A search of Mr. Phillips revealed that he had .2 grams of cocaine and 4.5 grams of marijuana on him. Mr. Phillips testified that he purchased the marijuana from Ms. Underwood earlier that day and that he got the cocaine "from somewhere else." Mr. Phillips also testified that Ms. Underwood did not sell cocaine.

Based upon the foregoing evidence, the jury convicted the Defendant of possession of drug paraphernalia and the lesser-included offense of facilitation of the sale of less than .5 grams of cocaine. Following a sentencing hearing, the trial court determined that the Defendant had five prior felony convictions, as well as six prior misdemeanor convictions,

and that the Defendant had a previous parole violation and two prior probation violations. See Tenn. Code Ann. § 40-35-114(1), (8). The trial court concluded that these factors outweighed the fact that the Defendant's crime neither caused nor threatened serious bodily injury. See Tenn. Code Ann. § 40-35-113(1). As such, the trial court imposed an effective ten-year sentence. The trial court denied the Defendant's request for an alternative sentence because the Defendant had "a long history of criminal conduct" and because measures less restrictive than confinement had frequently been applied unsuccessfully to the Defendant.

## ANALYSIS

### I. Sufficiency of the Evidence

The Defendant contends that the evidence was insufficient to sustain his conviction for facilitation of the sale of less than .5 grams of cocaine. The Defendant argues that the evidence was insufficient because there was no proof he "ever possessed any illicit substance." The State responds that the evidence was sufficient.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Bland, 958 S.W.2d at 659; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). A guilty verdict "may not be based solely upon conjecture, guess, speculation, or a mere possibility." State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). However, "[t]here is no requirement that the State's proof be uncontroverted or perfect." State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Put another way, the State is not burdened with "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 326.

Our supreme court has held that circumstantial evidence is as probative as direct evidence. State v. Dorantes, 331 S.W.3d 370, 379-81 (Tenn. 2011). As such, "direct and

circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Id. at 381. The reason for this is because with both direct and circumstantial evidence, "a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference . . . [and] [i]f the jury is convinced beyond a reasonable doubt, we can require no more." Id. at 380 (quoting Holland v. United States, 348 U.S. 121, 140 (1954)). To that end, the duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

It is an offense for a defendant to knowingly manufacture, deliver, sell, or possess with the intent to manufacture, deliver, or sell cocaine. Tenn. Code Ann. § 39-17-417(a). It is a Class C felony to commit any of these acts when the amount of the cocaine is less than .5 grams. Tenn. Code Ann. § 39-17-417(c)(2)(A). A person commits facilitation of a felony when "knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under [Tennessee Code Annotated section] 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a). Facilitation "is an offense of the class next below the felony facilitated." Tenn. Code Ann. § 39-11-403(b).

Both the Defendant and Ms. Underwood were sitting in the car when Mr. Hemphill approached them to purchase twenty dollars worth of crack cocaine. Mr. Hemphill testified he walked up to the Defendant and exchanged the twenty-dollar bill for a rock that later TBI analysis established to be .1 grams of cocaine. Mr. Phillips testified that Mr. Hemphill approached Ms. Underwood's side of the car, but he did not see the drug buy. The buy money was found lying in the Defendant's lap when he was arrested after the transaction. While no drugs were found on the Defendant, he did have a set of digital scales and over $800 in small denominations on him at the time of his arrest. Accordingly, we conclude that this evidence was sufficient to sustain the Defendant's conviction for facilitation of the sale of less than .5 grams of cocaine.

*II. Alternative Sentencing*

The Defendant contends that the trial court erred by denying his request for an alternative sentence. The Defendant argues that despite his status as a persistent offender "his amenability to alternative sentencing remained intact." The State responds that the trial court did not abuse its discretion in denying the Defendant's request for an alternative sentence.

On appeal, the burden is on the defendant to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Cmts. Our supreme court has held that an "abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012).

The Defendant was eligible for probation because the "sentence actually imposed upon [him was] ten (10) years or less." Tenn. Code Ann. § 40-35-303(a). Thus, the trial court was required to automatically consider probation as a sentencing option. Tenn. Code Ann. § 40-35-303(b). However, no criminal defendant is automatically entitled to probation as a matter of law. State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997). The defendant has the burden of establishing his or her suitability for full probation. See State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). The defendant must demonstrate that probation will "subserve the ends of justice and the best interests of both the public and the defendant." Hooper v. State, 297 S.W.2d 78, 81 (Tenn. 1956), overruled on other grounds, State v. Hooper, 29 S.W.3d 1, 9-10 (Tenn. 2000). Additionally, the Defendant was not considered to be a favorable candidate for alternative sentencing under the Sentencing Act because he was classified as a Range III offender. Tenn. Code Ann. § 40-35-102(6) (limiting the consideration as a favorable candidate for alternative sentencing to especially mitigated or standard offenders convicted of Class C, D, or E felonies and "in the absence of evidence to the contrary").

In determining any defendant's suitability for alternative sentencing, the trial court should consider whether

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C). A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code. Ann. § 40-35-103(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Ultimately, in sentencing a defendant, a trial court should

impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

To begin, we note that the Defendant was not initially considered to be a favorable candidate for alternative sentencing because he was a Range III, persistent offender. Furthermore, the record reflects that the Defendant had a lengthy criminal history including five prior felony convictions and six prior misdemeanor convictions. As such, there was sufficient evidence for the trial court to conclude that confinement was "necessary to protect society by restraining a defendant who has a long history of criminal conduct." Additionally, the Defendant had previously committed two probation violations and one parole violation. Therefore, measures less restrictive than confinement had been frequently applied to the Defendant without success. Based upon the foregoing, we conclude that the trial court did not abuse its discretion in denying the Defendant's request for alternative sentencing.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE